Justice Scalia,
dissenting.
The principal purpose of this Court’s exercise of its certiorari jurisdiction is to clarify the law. See this Court’s Rule 10. As The Chief Justice’s dissent makes painfully clear, the principal consequence of today’s decision is to create vast uncertainty with respect to a point of law that can be raised in all litigated eases in (at least) those 39 States that elect their judges. This eourse was urged upon us on grounds that it would preserve the public’s confidence in the judicial system. Brief for Petitioners 16.
*903 The decision will have the opposite effect. What above all else is eroding public confidence in the Nation’s judicial system is the perception that litigation is just a game, that the party with the most resourceful lawyer can play it to win, that our seemingly interminable legal proceedings are wonderfully self-perpetuating but incapable of delivering real-world justice. The Court’s opinion will reinforce that perception, adding to the vast arsenal of lawyerly gambits what will come to be known as the Caperton claim. The facts relevant to adjudicating it will have to be litigated— and likewise the law governing it, which will be indeterminate for years to come, if not forever. Many billable hours will be spent in poring through volumes of campaign finance reports, and many more in contesting nonrecusal decisions through every available means.
A Talmudic maxim instructs with respect to the Scripture: “Turn it over, and turn it over, for all is therein.” 8 The Babylonian Talmud: Seder Nezikin, Tractate Aboth, Ch. V, Mishnah 22, pp. 76-77 (I. Epstein ed. 1935) (footnote omitted). Divinely inspired text may contain the answers to all earthly questions, but the Due Process Clause most assuredly does not. The Court today continues its quixotic quest to right all wrongs and repair all imperfections through the Constitution. Alas, the quest cannot succeed— which is why some wrongs and imperfections have been called nonjusticiable. In the best of all possible worlds, should judges sometimes recuse even where the clear commands of our prior due process law do not require it? Undoubtedly. The relevant question, however, is whether we do more good than harm by seeking to correct this imperfection through expansion of our constitutional mandate in a manner ungoverned by any diseernable rule. The answer is obvious.